UNITED STATES of America,
Plaintiff-Appellee,

v.

Armin George PHILLIPS,
Defendant-Appellant.

No. 82–1468.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 9, 1982.

Decided Jan. 21, 1983.

Gary R. Blumberg, Gittleman, Paskel, Tashman & Ross, Robert Gittleman (argued), Southfield, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Susan M. Daltuva, Asst. U.S. Atty. (argued), Detroit, Mich., for plaintiff-appellee.

Before LIVELY and KRUPANSKY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

LIVELY, Circuit Judge.

This case concerns the appealability and the merits of an order granting the government's motion to disqualify defense counsel in a criminal case.

I.

A.

Armin George Phillips was indicted by a federal grand jury on October 15, 1981 for possession of cocaine and L.S.D. with the intent to distribute the drugs. After arraignment Phillips' retained counsel, Robert

Gittleman, filed a number of discovery and other pretrial motions. The day following the filing of the motions an assistant United States attorney filed a motion to disqualify Phillips' counsel on the ground of conflict of interest. In its motion the government asserted that Phillips had advised government agents at the time of his arrest that his supplier of cocaine was George Moraites and that Moraites had retained his attorney, Robert Gittelman, to represent Phillips. In addition, the motion stated that Phillips had expressed a desire to cooperate with the government agents, but had said he did not want attorney Gittleman to be aware of his cooperation because this would compromise Phillips with Moraites.

Phillips filed a reply to the motion in which he denied making the statements attributed to him by the government and expressed confidence in Mr. Gittleman. The reply admitted that the Gittleman law firm had represented Deborah Moraites, former wife of George Moraites, in civil matters since 1974. The defendant asserted in his reply that the government made no claim that Deborah Moraites had any connection with criminal activity, and that George Moraites had never been indicted or charged with any crime.

### B.

The district court held an extended evidentiary hearing on the motion to disqualify. One of the Drug Enforcement Agency (DEA) agents who executed a search warrant at Phillips' residence on March 24, 1981 and arrested Phillips testified in detail about statements which Phillips made to him at that time. According to this witness, while detained in his home Phillips said that Moraites was his source for drugs and would be obtaining attorney Gittleman as his lawyer, and would pay Gittleman's fees. The agent testified that Phillips also said he wanted to cooperate, but he didn't want Gittleman to know. Phillips expressed fear for his personal safety if Moraites should learn he was cooperating, according to the witness. On cross-examination the DEA agent testified that George

Moraites had no criminal record to his knowledge and that Moraites was represented by an attorney other than Gittleman in an ongoing investigation by the Internal Revenue Service of which the witness was aware.

Another DEA agent who took part in the raid at Phillips' home testified that during the processing of Phillips on the day following his arrest Phillips said George Moraites had hired his attorney and that Moraites was his source of cocaine. The witness also recounted that Phillips told him he wanted to cooperate with the DEA but "did not want us to tell the attorney that for fear of his life." The second agent also testified that "about the 26th" [of March] he met Phillips in a bar near the Federal Building in Detroit and that Phillips again stated that he wanted to cooperate in developing the investigation further. A third agent who was present during the questioning of Phillips confirmed the testimony of the first agent.

In addition to testifying himself Phillips produced several witnesses. An employee of Phillips, Jack Burden, testified that Phillips was an electrician and that both he and Moraites worked for Phillips. Burden was at the Phillips home with his wife and small child when the raid took place. The child was frightened, and one of the DEA agents took all three family members to the living room, some distance from the kitchen where Phillips was being interrogated. Both Jack Burden and his wife testified that Phillips was handled roughly and that he was very hostile and upset with the agents. Jack Burden said there was "no friendliness" between Phillips and the DEA agents while he was there. Attorney William Stern testified that he represented Phillips in an unrelated court action and that he called Phillips' residence early in the evening of March 24 and was given evasive answers by the woman (the third DEA agent) who answered the telephone. He then called attorney Gittleman, who had referred Phillips to him, to report that something appeared to be wrong at the Phillips residence. The DEA agents ac-

knowledged receiving several telephone calls by persons who said they were attorneys during the four hours they detained Phillips at home before taking him to jail. Stern also testified that Phillips was with him in court all day Thursday March 26 and Friday March 27 and about one-half of Monday March 30.

Phillips testified that he was in the shower cleaning up from the day's work in preparation for an evening meeting with William Stern when the DEA agents broke into his house. He had asked Jack Burden to stay after work to listen for the telephone while he was in the shower. Phillips said he was ordered out of the shower and taken, still wet and wearing only a bathrobe, to the kitchen where he was handcuffed and questioned. He said he was outraged by the actions of the agents and never willingly offered to cooperate with them though he might have said he would cooperate to speed up the proceedings and get to jail where he could contact his attorney. Phillips testified that he asked to talk with his lawyer on the telephone, but his request was denied. While the DEA agents were going through some papers found in his basement they asked Phillips about Moraites. Phillips said he told the agents that Moraites was a friend and an employee of his. He denied ever saying that Moraites was his supplier of cocaine. He also denied ever indicating that he did not want Gittleman as his lawyer, and stated positively that he always wanted Gittleman to represent him. On cross-examination Phillips stated he knew that Gittleman had represented Moraites in some civil matters. However, he again denied that he had ever identified Moraites as his supplier and he stated that he had paid Gittleman for representing him with his own money.

The district court held a separate hearing on waiver and concluded that Phillips had declined to "waive his rights."

### C.

The district court found the testimony of the three DEA agents credible, and that it was undisputed Moraites was a client of Gittleman. The court stated its conclusion as follows:

> In light of the finding that the unindicted drug supplier of defendant is a client of defendant's attorney and the finding that defendant has expressed concern over whether this attorney will represent his best interests, this Court concludes that a possible prejudicial conflict of interests exists if Mr. Gittleman continues to represent defendant.

The district court then noted that although Phillips insisted he wanted Gittleman to represent him, Phillips had declined to waive his rights. Since there had been no knowing and intelligent waiver of the right of counsel free of all conflict of interest, the court ordered Gittleman disqualified.

### II.

### A.

■ Phillips filed a notice of appeal and this court granted an expedited hearing. The government has raised the threshold issue of appealability, contending that an order disqualifying an attorney is not a final decision which may be appealed pursuant to 28 U.S.C. § 1291. The government relies principally on the decision of the Supreme Court in *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), and the Ninth Circuit decision in *United States v. Greger,* 657 F.2d 1109 (1981). Phillips argues that an order granting a motion to disqualify an attorney is a "collateral order" which is appealable under the "narrow exception" to finality set forth in *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We conclude that when the government moves for a pretrial order disqualifying retained defense counsel in a criminal case, an order granting such a motion is immediately appealable under § 1291.

In *Firestone Tire & Rubber Co. v. Risjord, supra,* the Supreme Court held that a party may not appeal pursuant to 28 U.S.C. § 1291 from an order denying a motion to disqualify counsel for an opposing party in

a civil case. The Court noted that it expressed no opinion on the appealability of an order granting disqualification in a civil case or denying disqualification in a criminal case. 449 U.S. at 372 n. 8, 101 S.Ct. at 672 n. 8. The Court found that orders denying disqualification in civil cases do not satisfy the three criteria for immediate appealability under § 1291 set forth in *Cohen, supra,* and refined in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). The Court stated the *Cohen* test as follows in *Coopers & Lybrand v. Livesay:*

> To come within the "small class" of decisions excepted from the final-judgment rule by *Cohen,* the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.[10]

[10] As the Court summarized the rule in *Cohen:*

"This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S., at 546 [69 S.Ct., at 1225].

*Id.* at 468, 98 S.Ct. at 2458 (citations omitted).

### B.

In the present case the government concedes that the disqualification order satisfies the first two tests of appealability. However, it insists that such an order is effectively reviewable following a final judgment and thus the third *Cohen* test is not satisfied. We disagree.

This court permits immediate appeals from orders granting motions to disqualify opposing counsel in civil cases. *See General Electric Co. v. Valeron Corp.,* 608 F.2d 265 (6th Cir.1979). In *Valeron* this court distinguished its earlier decision in *Melamed v. ITT Continental Baking Co.,* 592 F.2d 290 (6th Cir.1979), where an appeal pursuant to § 1291 was not permitted from an order *denying* a motion to disqualify opposing

counsel. Furthermore, in at least one criminal case we have permitted an appeal pursuant to § 1291 from an order granting a motion to disqualify counsel. In *United States v. Caggiano,* 660 F.2d 184 (6th Cir. 1981), *cert. denied,* 454 U.S. 1149, 102 S.Ct. 1015, 71 L.Ed.2d 303 (1982), the district court disqualified the entire office of a United States attorney and this court held the order immediately appealable. *Caggiano* is different from the present case in that the defendant, rather than the government, made the motion to disqualify. It is also unique in that operations of an entire office of the government were affected. Nevertheless, it is indicative of this court's approach to the issue of appealability.

Several other courts of appeals have held orders disqualifying defense counsel in criminal cases immediately appealable under § 1291. *E.g. United States v. Dolan,* 570 F.2d 1177, 1180 (3d Cir.1978); *United States v. Garcia,* 517 F.2d 272, 275 (5th Cir.1975); *United States v. Agosto,* 675 F.2d 965, 968 (8th Cir.1982). Still other courts of appeals have reviewed such orders pursuant to § 1291 without discussing appealability. *E.g. United States v. Armedo-Sarmiento,* 524 F.2d 591 (2d Cir.1975); *United States v. Duklewski,* 567 F.2d 255 (4th Cir.1977). We agree with the decisions which have found pretrial disqualification orders in criminal cases appealable under § 1291 and decline to follow the Ninth Circuit decision in *United States v. Greger, supra.* We do not believe the right to appeal a disqualification order after conviction is "plainly adequate." *Greger,* 657 F.2d at 1112.

### C.

The Sixth Amendment right to counsel includes the right of a defendant in a criminal case to be represented by counsel of his choosing. Though this right is not absolute, it is an "essential component" of the Sixth Amendment. *Linton v. Perini,* 656 F.2d 207, 208 (6th Cir.1981). The prosecution has no right to deny a defendant in a criminal case representation by counsel of his choice in the absence of a showing that some important interest will be adversely

affected by permitting chosen counsel to proceed. In *Linton, supra,* this court stated the general principle as follows:

> Every person has a constitutional right to retain at his own expense his own counsel so long as that right does not unreasonably interfere with the normal progress of a criminal case. Conversely, a state may not arbitrarily interfere with this right in the name of docket control. Evidence that a defendant was denied this right arbitrarily and without adequate reason is sufficient to mandate reversal without a showing of prejudice. Basic trust between counsel and defendant is the cornerstone of the adversary system and effective assistance of counsel.

*Id.* at 211–12. *See also United States v. Garcia, supra,* 517 F.2d at 273, where the court required "a cautious and sensitive consideration and balancing of individual constitutional protections, public policy and public interest in the administration of justice, and basic concepts of fundamental fairness" in ruling on a motion to disqualify defense counsel in a criminal case for conflicts of interest.

### D.

■ We are fully aware of the fact that piecemeal appeals are especially disfavored in criminal cases. *United States v. MacDonald,* 435 U.S. 850, 853, 98 S.Ct. 1547, 1548, 56 L.Ed.2d 18 (1978). The Supreme Court has recognized a right to appeal interlocutory orders in criminal cases under the "collateral order" rule in only two situations: the denial of a motion to dismiss a prosecution on double jeopardy grounds, *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); and the denial of a motion to reduce [or set] bail, *Stack v. Boyle,* 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). The nature of the constitutional right involved and the pervasive effect of a disqualification order on the proceedings must be considered. To require a defendant in a criminal case to stand trial and risk

conviction while deprived of the services of his chosen counsel without an opportunity to test the legality of the order of disqualification is fundamentally unfair. An order of disqualification is more akin to an order rejecting a double jeopardy claim than to ordinary reversible trial orders. From the time of disqualification the defendant's case is affected by the loss of an attorney in whom he has confidence. Even a most competent counsel who enters the picture following disqualification of the attorney first selected by the defendant labors under severe handicaps. A defendant erroneously deprived of the fundamental constitutional right to counsel of his choice should not be required to endure the rigors of trial and obloquy of conviction before establishing that error has been committed. The interest of the government to uninterrupted proceedings in a criminal case does not outweigh these rights of the defendant.[1]

### III.

### A.

■ The district court in the present case undertook a cautious and sensitive balancing of interests and found a "possible prejudicial conflict" if Mr. Gittleman were permitted to continue to represent Phillips. The district court's findings that the testimony of the DEA agents was credible and that Mr. Gittleman was the attorney of George Moraites in some matters were not clearly erroneous. Accepting the testimony of the DEA agents as true, the district court could find that Phillips had named Moraites as his supplier of drugs, had stated that Gittleman was representing him at the behest of Moraites and that Phillips feared for his safety if Moraites should learn through Gittleman that he was cooperating with the DEA. Given these findings the conclusion was justified that a conflict of interests would likely exist between Phillips and his attorney. At the pretrial stage it is

---

1. Our decision applies only to pretrial orders granting disqualification in criminal cases. We express no opinion on the appealability of orders of disqualification entered after a trial has begun, when the interest in continuing the trial to conclusion without interruption is a factor to be considered.

often impossible to determine whether an actual conflict exists. However, strong likelihood of conflict is sufficient to support an order of disqualification. *Compare United States v. Flanagan,* 679 F.2d 1072, 1076 (3rd Cir.1982), *cert. pending,* 51 U.S. L.W. 3151 (1982).

### B.

 Although a defendant in a criminal case has a right to be represented by counsel free of any conflicts of interest, this is a right which can be waived. *United States v. Mahar,* 550 F.2d 1005, 1007–08 (5th Cir. 1977). The waiver must be voluntary, and must be knowingly and intelligently made to be effective. Thus, a second sensitive inquiry must be made after a district court concludes that a conflict exists or is likely to develop. In the present case the district court conducted a separate hearing to determine whether Phillips desired to waive his constitutional right to the services of conflict-free counsel. At this hearing the court recounted the testimony at previous hearings and again stated on the record that he had weighed all the evidence and found the testimony of the DEA agents credible. The district court then addressed Phillips:

> THE COURT: Well, I say that if in fact what the government claims Mr. Gittleman is guilty of, that is, of a conflict of interest, being interested also not only in you but in Mr. Moraites, that certainly would be a conflict of interest and which would put him in the position of not rendering effective assistance of counsel for you. But if that is—whether that is true or not, if that is—if he does not render effective assistance of counsel for you, in view of what I have said and in view of what the government claims, do you waive your right to effective assistance of counsel under the Constitution?

After hearing a statement from Phillips' attorney, the court again reminded the defendant of its findings with respect to the truth of the testimony, and asked:

> Now, having made that finding, I am going to ask you once more, Mr. Phillips, if, despite that finding, that you would waive your right under the Constitution to effective assistance of counsel; that is, assistance of another attorney rather than Mr. Gittleman?

Phillips declined to waive the right to representation free of conflict of interest outlined by the court, stating that his counsel had advised him not to waive any of his constitutional rights. The inquiry at this hearing satisfied the requirement that a defendant be given an opportunity to proceed with counsel found by the court to have a likelihood of conflict. Phillips declined to waive his right to rely upon such conflict, if it should develop, as the basis of a claim of deprivation of the Sixth Amendment right to effective assistance of counsel.

The judgment of the district court is affirmed.