568 A.2d 693

**COMMONWEALTH of Pennsylvania**

v.

**Daniel CASSIDY, Appellant.**

Superior Court of Pennsylvania.

Argued May 17, 1989.

Decided Dec. 28, 1989.

F. Emmett Fitzpatrick, Philadelphia, for appellant.

Ann C. Lebowitz, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and ROWLEY and HESTER, JJ.

CIRILLO, President Judge:

Following a grand jury investigation, appellant Daniel Cassidy and six co-defendants were charged with several offenses involving alleged racketeering activity by members of the Philadelphia Police Department Narcotics Unit. Attorney F. Emmett Fitzpatrick represented Police Officer Leo Ryan in a federal court prosecution in 1987, and was retained by appellant Daniel Cassidy as well. Following his conviction, Ryan began to cooperate with the government and with the Commonwealth. As a result of a perceived conflict of interest, the Commonwealth filed a pre-trial

motion to disqualify attorney Fitzpatrick as Cassidy's trial counsel. The motions court of the Court of Common Pleas of Philadelphia granted the Commonwealth's motion. Cassidy appealed this pre-trial order. The Commonwealth then filed a motion to quash the appeal as interlocutory. A single motions judge of the Pennsylvania Superior Court denied the motion to quash. Before us now is the question of whether this pre-trial order is appealable.

## A. Appealability of the Order

Section 742 of the Judicial Code confers exclusive appellate jurisdiction on this court of all appeals from final orders of the courts of common pleas. *See* 42 Pa.C.S. § 742 (1981). Applying the strict definition of the term "final order," it is abundantly clear that the order disqualifying attorney Fitzpatrick is not a final order; it does not end the litigation nor dispose of the entire case. *See Commonwealth v. Wise*, 328 Pa.Super. 491, 493, 477 A.2d 552, 553 (1984) (final order is one which ends the litigation or disposes of the entire case). This determination, however, does not end our inquiry.

In *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975), our supreme court recognized that the finality and appealability of an order cannot "necessarily be ascertained from the face of the decree alone, nor simply from the technical effect of the adjudication." *Id.*, 465 Pa. at 228, 348 A.2d at 735. Confronted with this conclusion, the supreme court adopted the approach utilized by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), for determining what constitutes a final order. This approach entails looking to the practical rather than the technical construction of an order. *Pugar v. Greco*, 483 Pa. 68, 73, 394 A.2d 542, 545 (1978).

Pursuant to the *Cohen* approach, an order that appears interlocutory on its face is considered final and appealable if: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important

to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225. This three-part test was used by our supreme court in *Pugar v. Greco, supra,* and more recently in *Fried v. Fried,* 509 Pa. 89, 501 A.2d 211 (1985). In addition, it was applied by this court in *Commonwealth v. Bonaparte,* 366 Pa.Super. 182, 530 A.2d 1351 (1987).

We find that the order at issue in this case fulfills the requirements of the *Cohen* test. The first factor of the test is easily met; the order disqualifying Cassidy's counsel is clearly separable from and collateral to the main cause of action. In addition, because the right to counsel of one's choice, while not an absolute right, is one guarded by the sixth amendment of the United States Constitution, *see Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (sixth amendment provides right to select counsel of one's choice); *Commonwealth v. Novak,* 395 Pa. 199, 150 A.2d 102 (1959) (defendant has the constitutional right to choose at his or her own cost and expense any lawyer he or she desires); *Commonwealth v. Kittrell,* 285 Pa.Super. 464, 427 A.2d 1380 (1981) (criminal defendants have the constitutional right to choose at their own cost and expense any counsel they desire), there is no question that the right involved here is too important to be denied review. Thus, the second fact is also present.

The only remaining factor of the test to be met is the third one, namely, that the claimed right will be irreparably lost if review is postponed until final judgment is entered. In *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), the United States Supreme Court held that a criminal defendant's right to counsel is not irreparably lost if review of an order denying that right is postponed until the defendant is convicted and sentenced. As a state court, however, we are not bound to follow this holding. Our supreme court was free to ignore, reject, or adopt the *Cohen* test when it was created by the United States Supreme Court; we are equally free to reject the

Supreme Court's method of applying that test to a specific situation.

The criminal defendant's right to counsel of choice, as expressed in the sixth amendment of the United States Constitution and in article 1, section 9, of the Pennsylvania Constitution, cannot be effectively protected in our Commonwealth if we postpone review of orders disqualifying a criminal defendant's counsel of choice until the defendant has been found guilty and sentenced.[1]

Criminal defendants are given numerous rights under our state constitution: the right to counsel; the right to know the charges filed against them; the right to face the witnesses testifying against them; the right to subpoena individuals to testify in their defense; the right to a speedy trial; the right against self-incrimination; and the right to trial by jury. *See* Pa. Const. art. 1, § 9 (Supp.1989). Of all of these rights, the right to counsel is arguably the most important. It is the key which opens the door to all of a defendant's other rights. *See* Genego, *Prosecutorial Control Over a Defendant's Choice of Counsel,* 27 Santa Clara L.Rev. 17, 26 (1987) (while other rights are integral to the proper functioning of the adversary process, only the right to counsel enables defendants to assert their other rights).

---

**1.** A nationwide survey of the members of the National Association of Criminal Defense Lawyers revealed a dramatic increase in recent years of the number of prosecutorial attempts to have defense counsel disqualified. Genego, *The New Adversary,* 54 Brooklyn L.Rev. 781, 804–10 (1988). *See also* Lowenthal, *Successive Representation by Criminal Lawyers,* 93 Yale L.J. 1, 53–61 (1983) (survey results indicate marked increase in number of attempts by prosecution to have defense counsel disqualified). Two commentators suggest that the government's primary motive in bringing disqualification motions is "to disqualify the most competent lawyers and firms." Margolin & Coliver, *Pretrial Disqualification of Criminal Defense Counsel,* 20 Am. Crim.L.Rev. 227, 229 (1982). This view, they state, "is bolstered by the government practice of making selective disqualification motions against some of the defense counsel in a given case, and not other, generally less well-known attorneys, engaged in substantially the same potential conflicts." *Id. See also* Genego, *The New Adversary,* 54 Brooklyn L.Rev. 781, 814 (1988) (attorneys who are more experienced and earn the highest fees are the most likely to be subject to prosecutorial practices such as IRS summonses, disqualification motions, subpoenas for client-related information, and attempts to forfeit fees which they were paid for legal representation).

The right to counsel also provides the defendant with the means to develop and present his or her defense. A defendant may have exculpatory information, but, without any knowledge of the law or the skill to present that evidence to the jury, the defendant may not go free. With the aid of one trained in the law, however, the defendant has the means to utilize this information in the light most advantageous to his or her defense. As the United States Supreme Court cogently stated in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932):

> Even the intelligent and educated layman has small and sometimes no skill in the science of law ... He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he may be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Id.* at 69, 53 S.Ct. at 64.

The extent to which the right to counsel benefits a defendant, however, is greatly dependent upon the skill and ability of the particular counsel retained by the defendant. Certainly, none of us would disagree that all attorneys do not have the same ability to protect a defendant's rights, or to develop and present a defense. *See United States v. Laura*, 607 F.2d 52, 56 (3d Cir.1979) ("We would reject reality if we were to suggest that all lawyers are a homogeneous group."). Some attorneys are more intelligent than others; some have greater legal experience than others. Some attorneys exude more charisma before a jury than others.

The selection of an attorney is one of the most important decisions, if not the most important decision, made by a defendant in shaping a defense and in attempting to secure his or her release. *Id.* at 55. Thus, in our judgment a criminal defendant's right to select counsel of his or her choice cannot be effectively protected if we delay review of

orders denying that right until final judgment.[2] By forcing a defendant to proceed to trial without counsel of choice, we are forcing that defendant to reveal his or her defense, as well as the testimony of witnesses, to the Commonwealth. Consequently, even if the defendant is awarded a new trial due to the improper disqualification of his or her attorney, the defendant has already been permanently prejudiced.

Furthermore, while a defendant may be required to bear the cost of a defense in our system of justice, it is fundamentally unfair to force a defendant to proceed to trial without counsel of choice and expend countless dollars in counsel fees, only to be forced to appeal to secure the right to be represented by the attorney initially retained. If awarded a new trial on appeal, the defendant may no longer possess sufficient funds to finance the representation originally desired. *See* Comment, *Immediate Appealability of Orders Disqualifying a Criminal Defendant's Counsel*, Univ.Ill.L.Rev. 135, 150 (1984) (hereinafter "Comment") (even if a pretrial order disqualifying defense counsel is overturned on appeal, the defendant's financial situation may eliminate the possibility that his or her originally chosen counsel will represent the defendant in the new

2. This was also the view of the majority of the federal courts of appeal prior to the Supreme Court's pronouncement in *Flanagan. See United States v. Phillips*, 699 F.2d 798, 801–02 (6th Cir.1983) (despite policy that piecemeal appeals are especially disfavored in criminal cases, order disqualifying defendant's counsel of choice is immediately appealable order under *Cohen* test); *United States v. Agosto*, 675 F.2d 965, 968 n. 1 (8th Cir.1982), *cert. den. after remand and affirmance sub nom. Gustafson v. United States*, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982) (order disqualifying defense counsel is final order under collateral order doctrine); *United States v. Curcio*, 694 F.2d 14, 19–20 (2d Cir.1982) (orders disqualifying defense counsel immediately appealable under collateral order doctrine); *United States v. Flanagan*, 679 F.2d 1072, 1073 n. 1 (3d Cir.1982), *rev'd*, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (order disqualifying counsel is collateral order and thus immediately appealable); *United States v. Garcia*, 517 F.2d 272, 275 (5th Cir.1975) (order disqualifying defense counsel is appealable under principles enunciated in *Cohen*). *See also United States v. Hobson*, 672 F.2d 825, 826 (11th Cir.1982) (stating in conclusory language that order disqualifying defense counsel is a final order); *United States v. Smith*, 653 F.2d 126 (4th Cir.1981) (entertaining appeal of pretrial disqualification order without discussion of appealability question).

trial). In this situation, a defendant has been effectively denied the right to counsel of choice guaranteed by our state constitution.

Moreover, we cannot convincingly protect a defendant's right to counsel of choice when we force a defendant to bear the anxiety of trial and the humiliation of conviction before appealing the question of his attorney's disqualification. *See Comment, supra* at 149 (lack of effective review on appeal becomes apparent if right to counsel of choice is seen as the right to be free from an unfair trial without the services of a chosen lawyer and without the opportunity to test the legality of the disqualification order). The right to counsel of choice is the right to have chosen counsel through the adversarial process to avoid conviction in the first instance. As the Sixth Circuit Court of Appeals stated in *United States v. Phillips*, 699 F.2d 798 (1983):

> To require a defendant in a criminal case to stand trial and risk conviction while deprived of the services of his chosen counsel without an opportunity to test the legality of the order of disqualification is fundamentally unfair.... From the time of disqualification the defendant's case is affected by the loss of an attorney in whom he has confidence. Even a most competent counsel who enters the picture following a disqualification of the attorney first selected by the defendant labors under severe handicaps. A defendant erroneously deprived of the fundamental constitutional right to counsel of his choice should not be required to endure the rigors of trial and obloquy of conviction before establishing that error has been committed.

*Id.* at 802.

For these reasons, we hold that the right to counsel of choice cannot be effectively protected in this Commonwealth if review of pretrial orders disqualifying defense counsel is postponed until final judgment.[3] We find there-

3. In *Flanagan,* the Supreme Court placed great emphasis on the need to prevent delay in the criminal justice system. The court reasoned that a "delayed trial is a certain result of interlocutory appellate

fore that all three factors of the *Cohen* test have been met and the order disqualifying Mr. Fitzpatrick as Daniel Cassidy's counsel is appealable.

## B. Merits of the Appeal

■ We turn now to the merits of this appeal, namely, did the motions court err in entering the order disqualifying Cassidy's chosen counsel. In addressing this issue, we find it necessary to reiterate our previous statement and the well established principle that the right to counsel of choice, while not absolute, is guarded by the sixth amendment of the United States Constitution. *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *United States v. Cunningham,* 672 F.2d 1064 (2d Cir.1982); *United States v. Laura,* 607 F.2d 52 (3d Cir.1979).

> The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." This constitutional guarantee generally ensures that a criminal defendant may be represented by any counsel who will agree to take his case. Although "[a] defendant's right to counsel of his choice is not an absolute one," *United States v. Ostrer,* 597 F.2d 337, 341 (2d Cir.1979), *we have consistently recognized that the right of a defendant who retains counsel to be represented by that counsel is " 'a right of constitutional dimension.' "* *United States v. Wisniewski,* 478 F.2d 274, 285 (2d Cir.1973), *quoting United States v. Sheiner,*

review" of pretrial disqualification orders. *Flanagan,* 465 U.S. at 298, 104 S.Ct. at 1073. Rebutting this conclusion, one commentator states:
> [T]he court must give a defendant in a criminal case adequate time to find a new attorney, and the sixth amendment requires that the court grant new counsel sufficient time to advise the client and to become acquainted with the facts and law of the case. *During this delay, a court can hear an appeal of the disqualification order without unduly disrupting the litigation.*

Comment, *Immediate Appealability of Orders Disqualifying a Criminal Defendant's Counsel,* Univ.Ill.L.Rev. 135, 148 (1984) (footnotes omitted) (emphasis added).

410 F.2d 337, 342 (2d Cir.), *cert. denied,* 396 U.S. 825, 90 S.Ct. 68, 24 L.Ed.2d 76 (1969) (emphasis added).

672 F.2d at 1070.

■ When a defendant's selection of counsel, under the particular facts and circumstances of a case, places the fairness and integrity of the defendant's trial in jeopardy, the defendant's right to counsel of choice may be justifiably denied. *Wheat,* 486 U.S. at 158, 108 S.Ct. at 1696 (Marshall, J., dissenting). However, a *presumption* must first be recognized in favor of the defendant's counsel of choice; to overcome that presumption, there must be a demonstration of an *actual conflict or a showing of a serious potential for conflict. Id.* at 167, 108 S.Ct. at 1701 (emphasis added). We find that the present state of the record shows neither an actual conflict, nor a serious potential for conflict. The right to counsel of choice "should not be interfered with in cases in where the potential conflicts of interest are highly speculative...." *United States v. Flanagan,* 679 F.2d 1072, 1076 (3d Cir.1983), *rev'd on different grounds,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). *See also* Rules of Professional Conduct, Comment to Rule 1.7 ("Where a conflict is such as *clearly to call in question the fair or efficient administration of justice,* opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment.")

■ Thus, we conclude that the motions court failed to afford the defendant the presumption in favor of representation by Mr. Fitzpatrick, counsel of choice.[4] In the Commonwealth's Petition to Disqualify Counsel, it is alleged that Mr. Fitzpatrick represented former police officer Leo Ryan in a federal prosecution in 1987. Following Ryan's

---

**4.** Without affording a defendant the benefit of this presumption, we too easily set the stage for disqualification of the most reputable members of the Pennsylvania Bar; bringing a disqualification motion against the most competent lawyers and firms is certainly not a novel idea. "[T]he purpose of the Rules [of Professional Conduct] can be subverted when they are invoked by opposing parties as procedural weapons." Scope, Rules of Professional Conduct.

conviction, he began to cooperate with the federal government and the Commonwealth. The Commonwealth alleges that Leo Ryan "will testify at Cassidy's trial and his testimony will relate to his personal observations of Cassidy as well as[ ] conversations he had with Cassidy [and that] Mr. Fitzpatrick can not effectly [sic] cross examine Mr. Ryan without revealing confidences he learned by representing Mr. Ryan or at a minimum, appearing to do so."

This information, without more, does not demonstrate an actual conflict and, in our opinion, does not present a serious potential for conflict. Rule 1.7(b) of the Rules of Professional Conduct provides:

Conflict of Interest: General Rule

\* \* \* \* \* \*

(b) A lawyer shall not represent a client if the *representation of that client may be materially limited by the lawyer's responsibilities to another client* or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after full disclosure and consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Rule 1.7, Rules of Professional Conduct (emphasis added).

Rule 1.9 provides as follows:

Conflict of Interest: Former Client

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are *materially adverse to the interests of the former client* unless the former client consents after a full disclosure of the circumstances and consultation; or

(b) *use the information relating to the representation to the disadvantage of the former client* except as Rule

1.6 would permit with respect to a client or when the information has become generally known.

Rule 1.9, Rules of Professional Conduct (emphasis added).

The Commonwealth has not shown that Mr. Fitzpatrick's representation of Cassidy may be "materially limited" by his responsibilities to Ryan or to himself. *See* Rule 1.7. In addition, the Commonwealth has not shown that Cassidy's interests are "materially adverse" to the interests of Ryan. *See* Rule 1.9. Our review of the record indicates that, in addition to denying the defendant the presumption of representation by counsel of choice, the Commonwealth failed to present any concrete evidence which would overcome this presumption. While Mr. Fitzpatrick did previously act as Leo Ryan's counsel, there has been no showing that he was made privy to any information that is not of public record or that he could utilize to impeach Ryan. It is not certain that Ryan will testify for the Commonwealth. If he does, it is up to Leo Ryan to raise the attorney-client privilege. "The attorney-client privilege is that of the client, and not of the lawyer." *See* Rules of Professional Conduct, Scope. In our opinion, this disqualification motion is premature; the Commonwealth is tilting at windmills when there are no dragons on the horizon.

Furthermore, if the Commonwealth is concerned that Mr. Fitzpatrick, as a result of his representation of Leo Ryan, became aware of information which could be favorable to the accused, of which the Commonwealth is already aware, the Commonwealth is constitutionally required to disclose this information. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *see also* Pa.R.Crim.P. 305. Finally, we find the Commonwealth's focus on the issue of a conflict of interest inappropriate. We perceive the issue to be that of Mr. Fitzpatrick's ethical obligation to hold inviolate the confidences of his former client, Leo Ryan, as a result of his representation of Ryan. *See* Rules of Professional Conduct, Rule 1.6 and Comment. At this point we must assume that Mr. Fitzpatrick will choose to retain any confidential information he may have regarding

his former client, rather than risk disciplinary sanctions. In doing so, we avoid any speculation into potential conflicts.

Consequently, at this time, we find that there is no basis to support a conclusion that Mr. Fitzpatrick's representation of Daniel Cassidy presents an actual conflict of interest or even a serious potential for conflict. Under these circumstances, protecting the defendant's right to counsel must be our paramount concern. *Accord - United States v. Cunningham,* 672 F.2d 1064 (1982) (defendant's right to counsel of choice outweighs government interest in disqualifying his attorney; witness's interests can be adequately protected where defendant is willing to have counsel's cross-examination limited to matters of public record). We conclude, therefore, that the motions court erred in granting the Commonwealth's motion to disqualify Mr. Cassidy's counsel.

Order reversed; case remanded for trial. Jurisdiction relinquished.