705 A.2d 830

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Calvin JOHNSON, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 1996.

Decided Jan. 6, 1998.

John W. Packel, Helen A. Marino, Philadelphia, for Calvin Johnson.

Catherine Marshall, Louis C. Schoener, Child Advocate, Hugh B. Burns, Jr., Philadelphia, for the Com.

Before, FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

NIGRO, Justice.

Appellant Calvin Johnson contends that the trial court erred in removing his counsel from this case after counsel violated a court order related to the discovery of mental health records.

In affirming the trial court's decision, the Superior Court ruled that an order removing counsel is immediately appealable. As discussed below, we hold that an order disqualifying counsel is interlocutory and is not immediately appealable. Thus, we reverse the Superior Court's decision and remand for the entry of an order quashing the appeal.

Appellant was arrested in 1993 for the 1981 murder of Elvira Hayes. Elvira Hayes was strangled in her home. When her body was discovered, Elvira Hayes' two year old son, L.P., was sleeping on top of her on the floor. Appellant was a boyfriend of Elvira Hayes and while questioned after the murder, he was not arrested. Elvira Hayes' sister and her husband adopted L.P. after the murder. He underwent counselling and psychiatric care at several institutions in the following years.

In 1993, L.P., then 15 years old, provided a statement to the police that led to Appellant's arrest. L.P. said that he remembered seeing Appellant lying on top of his mother where her body was found. Appellant was charged with the murder and the court appointed the Public Defender Association to represent him. In preparing for trial, Appellant's counsel sought discovery of L.P.'s mental health records. Because L.P. did not disclose his memory of the murder for over a decade, counsel maintained that they needed the records to prepare a defense.

At a hearing, defense counsel told the court that it needed a court order to get the psychiatric records because of their confidentiality. The trial court decided that the proper course was to order that the records be produced to the court for review to determine their relevance and whether they should be released to counsel. The court then ordered the Eastern Pennsylvania Psychiatric Institute (EPPI) to produce in court its records related to L.P. EPPI's records, however, were hand delivered to defense counsel and counsel read them. These documents contained records from other institutions where L.P. was treated.

The court learned that defense counsel received EPPI's records at a subsequent hearing. Counsel gave them to the court which reviewed them as originally intended for discoverable material. While the court initially found no relevant documents, it undertook another review at the request of defense counsel who believed there were relevant documents based upon their review. The court then found relevant documents and gave them to both parties.

Based upon these records, Appellant moved to re-open the preliminary hearing to further question L.P. He also petitioned to obtain all of the medical records. The trial court realized at this time that defense counsel had digested all of the records and decided that the only way to proceed fairly was to give all of the records to both sides.

The Commonwealth did not review the records but consulted the Support Center for Child Advocates about L.P.'s rights. It then asked the court to appoint a child advocate to protect L.P. The court did so and the advocate maintained that L.P.'s records were absolutely privileged and suggested that the best recourse was to remove defense counsel. The Commonwealth agreed that the removal of defense counsel would protect L.P.'s rights and ensure that Appellant received a fair trial.

The trial court removed the Public Defender Association and appointed new counsel for Appellant. It based its decision upon defense counsel's disregard of the court's instructions that it would review L.P.'s records, and its order directing EPPI to produce the records to the court. The court decided that counsel would be unable to forget the information in the records and that the harm to the witness, L.P., could not be otherwise remedied. On appeal, the Superior Court affirmed. It ruled that the court's order is immediately appealable and held that the trial court did not abuse its discretion or violate Appellant's constitutional rights by removing counsel under the circumstances. We granted Appellant's Petition for Allowance of Appeal.

We must first address whether an order removing

counsel in a criminal case is immediately appealable.[1] This is an issue of first impression for this Court. The Superior Court has appellate jurisdiction of all appeals from final orders of the courts of common pleas. 42 Pa. Cons.Stat. § 742 (1981). A final order is one that ends the litigation or disposes of the entire case. *Pugar v. Greco*, 483 Pa. 68, 73, 394 A.2d 542, 545 (1978). In criminal cases, a defendant generally may appeal only from a judgment of sentence. *Commonwealth v. Myers*, 457 Pa. 317, 319, 322 A.2d 131, 132 (1974). This rule prevents undue delay and avoids the disruption of criminal cases by piecemeal appellate review.

■ The rule of finality, however, is not absolute. An interlocutory order is considered final and appealable if it satisfies an exception for collateral orders. Under this exception, an order is immediately appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. *Pugar v. Greco*, 483 Pa. 68, 73, 394 A.2d 542, 545 (1978). *See also* Pa. R.App. P. 313 (codifying collateral order exception).[2]

Consistent with this exception, criminal defendants have appealed before judgment of sentence when an appeal was

1. The Commonwealth moved to quash Appellant's appeal of the order removing counsel. The Superior Court entered an interlocutory order denying the motion and explained its ruling in its opinion on the merits. In response to Appellant's brief to this Court, the Commonwealth again argues that the trial court's order is not immediately appealable and this jurisdictional issue is now properly before us.

2. This Court has followed the United States Supreme Court's approach to collateral orders established in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 228, 348 A.2d 734, 735 (1975). While the United States Supreme Court refined the requirements for an appealable collateral order in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), they are substantively similar to the requirements under Pennsylvania law. Under *Coopers & Lybrand*, an order must (1) conclusively determine the disputed question; (2) resolve an important issue completely separate from the merits of the action; and (3) be effectively unreviewable on appeal from final judgment. 437 U.S. at 468, 98 S.Ct. at 2457–58.

necessary to ensure that they would not be deprived of a constitutional right. In *Commonwealth v. Brady*, 510 Pa. 336, 346, 508 A.2d 286, 291 (1986), for example, we held that a defendant may immediately appeal the denial of a motion to dismiss based upon double jeopardy absent a trial court finding that the motion is frivolous. If it is determined post-judgment that the trial court erred in denying a pre-trial motion based upon double jeopardy, the defendant's right to be free of a second prosecution is lost. *Id.* at 340, 508 A.2d at 288.[3]

In contrast, a defendant may not immediately appeal the denial of a suppression motion. *Commonwealth v. Bosurgi*, 411 Pa. 56, 64, 190 A.2d 304, 309 (1963). Even though suppression motions are generally based upon alleged constitutional violations, the claims can be effectively reviewed post-judgment. If a ruling was incorrect, the defendant is granted a new trial, the illegally-obtained evidence is suppressed, and his constitutional right is not lost. Similarly, this Court has held that an order rejecting a defendant's claim that his right to a speedy trial was violated is not immediately appealable. *Commonwealth v. Myers*, 457 Pa. 317, 319–20, 322 A.2d 131, 133 (1974). As long as there has been a hearing in the court below on the speedy trial issue, the right to a speedy trial can be adequately protected in a review following trial. *Commonwealth v. Swartz*, 397 Pa.Super. 157, 161, 579 A.2d 978, 980 (1990).

While this Court has not addressed whether orders disqualifying counsel in criminal cases are immediately appealable, the United States Supreme Court has held that they are not. In *Flanagan v. United States*, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), the district court granted the government's motion to disqualify a law firm that was retained to

---

**3.** *Brady* was before the Court to address the applicability of a Supreme Court case that was decided before the Court set forth the test for an appealable collateral order in *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978). Thus, while considering the principles embodied in the test, *Brady*—as well as earlier Supreme Court decisions cited in this opinion—decided the appealability of the pre-trial order without addressing the collateral order exception *per se.*

represent multiple defendants. It found a clear potential for conflicts of interest. The court presumed that the firm obtained privileged information from each of the defendants and thus disqualified it from representing any of them. The defendants appealed and argued in part that the disqualification of counsel of their choice deprived them of their Sixth Amendment right to assistance of counsel.

The United States Supreme Court held that disqualification orders do not satisfy the requirements of the collateral order exception. *Id.* at 268–69, 104 S.Ct. at 1056–57. The Court found that the exception would not apply whether a defendant had to show that he was prejudiced by the removal of counsel or he did not have to make such a showing. It stated that if a defendant is not required to show prejudice, the disqualification order can be effectively reviewed post-judgment. *Id.* The exception's third requirement is not met. Post-conviction review protects the right to counsel because if a defendant establishes that removing counsel was an error, he gets a new trial with his counsel of choice. His right is not lost. The Court further stated that if a defendant must show prejudice, the exception does not apply because the disqualification order would not be separate from the merits. The effect of counsel's disqualification cannot be assessed until the case is tried. *Id.*

The Court also explained that it strictly interprets the collateral order exception in criminal cases because of the compelling interest in prompt trials. *Id.* at 265–66, 104 S.Ct. at 1054–55. It found disqualification orders unlike other collateral orders affecting rights that can be lost if not appealed before trial, such as the denial of a double jeopardy claim. *Id.* Rather, it viewed them as indistinguishable from other pre-trial orders that affect criminal defendants' rights but must await the completion of trial court proceedings for review. Thus, the Court ordered that the appeal be dismissed. *Id.* at 270, 104 S.Ct. at 1057.

The Superior Court declined to follow *Flanagan* in *Commonwealth v. Cassidy*, 390 Pa.Super. 359, 568 A.2d 693 (1989). In *Cassidy*, the trial court also granted the Commonwealth's

motion to disqualify counsel representing co-defendants due to a perceived conflict of interest. When a defendant appealed, the Superior Court held that the disqualification order satisfied the collateral order exception. It stated that the order is separate from the main cause of action and involves the important Sixth Amendment right to choose counsel. *Id.* at 363, 568 A.2d at 695.

The Superior Court disagreed with *Flanagan* that the order did not satisfy the exception's third requirement—that it could not be reviewed post-judgment. The Superior Court stated that by forcing a defendant to proceed to trial without counsel of choice, he must reveal his defense. Even if awarded a new trial for violation of the right to counsel, he is prejudiced. *Id.* at 366–67, 568 A.2d at 696–97. In addition, the court found that it is unfair to require a defendant to pay for counsel who is not his choice and then bear the cost of a second trial. *Id.* Finally, the court stated that a defendant should not have to go through the anxiety of trial before appealing his attorney's disqualification. *Id.*

The Superior Court's concerns, however, have nothing to do with whether the right to counsel of choice is lost if not reviewed before judgment. In every case where erroneous pre-trial rulings ultimately require a new trial, defendants have revealed their defenses and borne the costs of trial. The majority of pre-trial rulings, however, are not immediately appealable. Thus, the reasoning in *Cassidy* does not support that an order removing counsel satisfies the third requirement of the collateral order exception and that it cannot be reviewed post-judgment.[4]

■ We agree with the United States Supreme Court's decision in *Flanagan* that disqualification orders do not satisfy the collateral order exception. Like the denial of a suppres-

---

4. With respect to the financial cost of two trials, the Commonwealth distinguishes this case from *Cassidy* because Appellant's counsel was court-appointed. Because we find below that the propriety of removing counsel—appointed or retained—can be reviewed after trial, we need not address distinctions, if any, between defendants' rights to retained versus court-appointed counsel.

sion motion, an order disqualifying counsel is reviewable after judgment of sentence. If a judgment is obtained and it is determined on appeal that the trial court improperly removed counsel, the right to counsel of choice is not lost. There will be a new trial and the defendant will have his counsel of choice. This is unlike a double jeopardy claim where if the trial goes forward and the court wrongly denied the motion, the right is lost. Furthermore, the right to counsel of choice is not absolute. *Commonwealth v. Hess*, 532 Pa. 607, 619, 617 A.2d 307, 314 (1992); *Commonwealth v. Baines*, 480 Pa. 26, 30, 389 A.2d 68, 70 (1978).

In addition, this case exemplifies the importance of the finality rule and why piecemeal appeals should be avoided. After Appellant's counsel was removed, the Superior Court denied a motion to stay the case from proceeding. Thus, while this appeal has been pending, this case is advancing with Appellant's new counsel learning the case, developing a relationship with Appellant, and potentially obtaining a judgment in Appellant's favor. The propriety of removing Appellant's original counsel ultimately may become moot.

■ We thus hold that an order removing counsel in a criminal case is interlocutory and not immediately appealable. Whether the trial court erred in removing counsel is not properly before this Court. We thus reverse and remand this case to the Superior Court to enter an order quashing the appeal. Jurisdiction relinquished.

ZAPPALA files a dissenting opinion in which FLAHERTY, C.J., joins.

ZAPPALA, Justice, dissenting.

I disagree with the majority's conclusion that an order disqualifying counsel is not immediately appealable. A defendant's right to his chosen attorney[1] is too important to be

1. In speaking of a defendant's right to counsel of choice, I refer to a defendant's right not to be stripped of the attorney he or she has chosen, or of an attorney that has become the defendant's counsel on appointment by the court. I do not imply that the right to counsel is

denied immediate review, and the defendant will be irreparably harmed if a disqualification order cannot be appealed until after trial.

The majority concludes that a disqualification order does not satisfy the requirements of the collateral order exception to the general rule that only final orders are appealable. In doing so, the majority endorses the reasoning of *Flanagan v. United States,* 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), rejects the rationale of the Superior Court's decision in *Commonwealth v. Cassidy,* 390 Pa.Super. 359, 568 A.2d 693 (1989), and likens a disqualification order to rulings that are not immediately appealable, such as rulings on motions to suppress evidence.

In *Flanagan,* the U.S. Supreme Court held that a trial judge's order disqualifying a criminal defendant's counsel did not satisfy the requirements of the collateral order exception and therefore was not immediately appealable. I note that prior to *Flanagan,* a majority of federal appellate courts held disqualification orders to be immediately appealable. In *United States v. Garcia,* 517 F.2d 272, 275 (5th Cir.1975), the court explained that such orders were "separable from, and collateral to, rights asserted in the action, *too important* to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." (emphasis added). The court also concluded that "deferral of review until after completion of the trial would dissipate judicial resources and possibly jeopardize the defendants' case by prohibiting representation at trial by counsel of their choice." *Garcia,* at 275.

In *United States v. Phillips,* 699 F.2d 798, 802 (6th Cir. 1983), the court reasoned that "[t]o require a defendant in a criminal case to stand trial and risk conviction while deprived of the services of his chosen counsel without an opportunity to test the legality of the order of disqualification is *fundamentally unfair.*" (emphasis added). The *Phillips* court went on to conclude that "[a] defendant erroneously deprived of the

absolute or suggest that a defendant has an unfettered right to be represented by any attorney he or she may request.

fundamental constitutional right to counsel of his choice should not be required to endure the rigors of trial and obloquy of conviction before establishing that error has been committed." *Phillips*, at 802.

In addition, the Second, Third, Fourth, Eighth and Eleventh Circuits all considered disqualification orders immediately appealable prior to *Flanagan*. *See United States v. Curcio*, 694 F.2d 14 (2d Cir.1982) (disqualification order is immediately appealable under collateral order doctrine); *U.S. v. Flanagan*, 679 F.2d 1072, 1073 n. 1 (3d Cir.1982), *rev'd*, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (disqualification order is a collateral order and therefore appealable); *U.S. v. Smith*, 653 F.2d 126 (4th Cir.1981) (entertaining appeal of pre-trial disqualification order without discussion of appealability issue); *U.S. v. Agosto*, 675 F.2d 965, 968 n. 1 (8th Cir.1982), *cert. den. after remand and affirmance sub. nom. Gustafson v. U.S.*, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982) (disqualification order is final order under collateral order doctrine); *U.S. v. Hobson*, 672 F.2d 825, 826 (11th Cir.1982) (using conclusory language that disqualification orders are immediately appealable).

Because *Flanagan* resolved an issue of federal appellate procedure, not constitutional law, we are not bound to follow it. I would hold, as the majority of federal appellate courts held prior to *Flanagan*, that disqualification orders are immediately appealable. The right to counsel is of exceptional and unusual importance, for it is that right which opens the door to all of a defendant's other rights.

If a defendant is forced to suffer the loss of the benefits that a right is intended to protect, then it does not matter that, after the fact, a court is willing to reinstate that right in a technical fashion. Practically speaking, the defendant will only be able to recover those benefits that survived the erroneous denial of the right in the first place. *See Bell v. Beneficial Consumer Co.*, 465 Pa. 225, 228, 348 A.2d 734, 735 (1975) ("a finding of finality must be the result of a practical

rather than a technical construction.") [2]

Some of the benefits of a defendant's right to chosen counsel were discussed in *Cassidy,* where the Superior Court held that an order disqualifying a defendant's counsel was immediately appealable. The court explained that requiring a defendant to proceed to trial without counsel of choice forces the defendant to reveal his or her defense, as well as the testimony of witnesses, to the prosecution. *Cassidy,* 390 Pa.Super. at 366, 568 A.2d at 696. Consequently, even if the defendant is awarded a new trial due to the improper disqualification of his or her attorney, the defendant has already been permanently prejudiced. *Id.* Additionally, the court found it fundamentally unfair to require a defendant to proceed to trial without counsel of choice and incur the attendant counsel fees in order to vindicate on appeal the right to be represented by the attorney initially retained. *Id.* at 366, 568 A.2d at 696–97. The court also concluded that it could not convincingly protect a defendant's right to counsel of choice if the defendant had to bear the anxiety of trial and the humiliation of conviction before appealing the issue. *Id.* at 367, 568 A.2d at 697.

The majority rejects *Cassidy* on the grounds that the court's reasons for permitting immediate appeal are common to all erroneous pre-trial rulings, yet the majority of pre-trial rulings are not immediately appealable. Majority Opinion at 834. According to the majority, the *Cassidy* court's concerns "have nothing to do with whether the right to counsel of choice is lost if not reviewed before judgment." *Id.* at 834. To the contrary, I find that the court's concerns are very relevant to the issue of whether the right to counsel of choice will be irreparably lost, since those concerns reflect the benefits of the right itself. As previously noted, if the benefits of a defendant's right to his chosen counsel are lost, then in both a logical and practical respect the right itself is lost.

**2.** In *Bell,* we held that an order dismissing the class aspects of a suit is a final order for the parties put out of court and is appealable even though, in theory, the named plaintiffs can individually pursue action further and the ousted members of the class can bring separate individual actions. *Bell,* 465 Pa. 225, 348 A.2d 734 (1975).

Moreover, there are additional consequences of forcing a defendant to wait until after judgment to appeal a disqualification order not addressed in *Cassidy, Flanagan*[3] or the majority's opinion. For example, the defendant's chosen counsel may not be available for a second trial due to illness, relocation, or other work that prevents him or her from representing the defendant in a new trial. If this is the case, then the defendant's right will have been irreparably lost. There is also the possibility that a defendant may not have the financial resources to obtain the originally chosen attorney a second time. Additionally, the defendant might be hesitant to confide in the new attorney after having been stripped of his or her first attorney.

Simple reinstatement of the original attorney after trial will not repair the defendant's lost faith in the certainty of his relationship with his attorney. *See* Osoba, at 151, *citing* Margolin & Coliver, *Pretrial Disqualification of Criminal Defense Counsel,* 20 Am.Crim.L.Rev. 227, 227–28 (1982). The only way to prevent such a rupture is to permit such orders to be immediately appealed.

The majority does not decide the question of whether a defendant appealing a disqualification order would have the burden of proving prejudice. For the reasons stated above, I reject the majority's abrupt conclusion that "[i]f a defendant is not required to show prejudice, [then] the disqualification order can be effectively reviewed post-judgment." Majority Opinion at 833, *citing Flanagan* at 268–69, 104 S.Ct. at 1056–57. However, if a defendant were required to show prejudice on appeal, I believe there are additional problems that would prevent an appellate court from conducting effective review.

3. In *Flanagan,* jurisdiction was not challenged in the lower court. Therefore, the Court avoided a number of potential arguments regarding the issue of immediate appealability. Indeed, the Court failed to address any of the rationales that a number of circuit courts had employed in concluding that disqualification orders were immediately appealable. *See* Wayne F. Osoba, *Immediate Appealability of Orders Disqualifying a Criminal Defendant's Counsel,* Univ.Ill.L.Rev. 135, 137 n. 16 (1984), *citing* 52 U.S.L.W. 4201, 4202 n. 2 (U.S. Feb. 21, 1984).

In contrast to many other rights, such as the right to a fair trial or the right to be free from an unreasonable search or seizure, where there is an inherently objective nature to the right, the right to chosen counsel is highly subjective. The absence of an objective element makes it virtually impossible to determine whether the defendant was prejudiced by an improper disqualification of his chosen counsel; there is no objective standard for making such a judgment.

Among the grounds offered by the majority in support of its holding, is the possibility that new counsel may obtain a judgment in Appellant's favor. I cannot agree that potential mootness is a justification for denying a defendant proper appellate review of a trial judge's decision to strip him of his right to his chosen counsel. The right to chosen counsel is too important to simply wait and see if an acquittal will make it unnecessary for an appellate court to vindicate the right.

Nor do I find that the potential delay in the trial proceedings, or congestion at the appellate level, justify denying immediate appellate review. Disqualification orders are relatively uncommon. Therefore, they would not contribute substantially to our appellate court dockets. We should be true to our words in *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 232, 348 A.2d 734, 738 (1975), that, "[w]e do not perceive our appellate responsibilities as a variable function of our caseload."

I also do not think that a potential delay in the trial court proceedings justifies denying a defendant proper appellate safeguards against an erroneous disqualification order. There is already a delay that results from the defendant's need to find new counsel, or the court's need to appoint new counsel. An expedited review process could quickly dispose of these appeals from the small number of disqualification orders that are issued. In the time it would take new counsel to acquaint themselves with the case, an effective review could be made by an appellate court.

Finally, permitting immediate appeals from disqualification orders will prevent parties with adverse interests from suc-

cessfully having a defendant's counsel disqualified, if the disqualification is legally unwarranted. Thus, the danger of parties attempting to use disqualification motions as a litigation tactic would be eliminated. *See* Genego, *Prosecutorial Control Over A Defendant's Choice of Counsel,* 27 Santa Clara L.Rev. 17 (1987).

Practical protection of a defendant's right to his or her chosen counsel requires that disqualification orders be subject to immediate appeal. Otherwise, the defendant will be irreversibly denied many of the benefits that are at the heart of that important right. Because I believe that the question of whether the trial judge erred in removing counsel is properly before us, I dissent from the order quashing the appeal.

FLAHERTY, C.J., joins this dissenting opinion.