J-S01021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC LEE BRADBURN | : | |
| | : | |
| Appellant | : | No. 1003 MDA 2020 |

Appeal from the Judgment of Sentence Entered March 11, 2020
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000325-2019

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED JUNE 15, 2021**

Eric Lee Bradburn (Appellant) appeals from the judgment of sentence entered in the Lebanon County Court of Common Pleas following his jury convictions of three counts each of rape, statutory sexual assault, and indecent assault, and one count each of involuntary deviate sexual intercourse (IDSI), corruption of minors, and endangering the welfare of children.[1] Appellant argues: (1) the trial court erred in proceeding to trial despite Appellant's filing a notice of appeal regarding his request for new counsel; and

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(a)(1), 3122.1(b), 3126(a)(8), 3123(a)(7), 6301(a)(1)(ii), 4304(a)(1), respectively.

(2) the verdict was against the weight and sufficiency of the evidence.  For the reasons below, we affirm.

The facts of the underlying case are as follows.  On January 25, 2019, Appellant's stepdaughter (Victim), then 17 years old, reported that Appellant had sexually abused her between the ages of 13 and 15.  N.T., Jury Trial Vol. I, 12/18/19, at 21-25, 99-100.  On that same day, Detective David Shaffer of the Lebanon County Child Abuse Response Team (CART) conducted a "minimal facts interview" with the Victim, "to get the basics of the case."  *Id.* at 105-06.

On February 4, 2019, Forensic Interviewer Violet Witter spoke with the Victim.  N.T., Jury Trial Vol. I at 70.

> [The Victim] disclosed to Forensic Interviewer [ ] Witter that [Appellant] forcefully penetrated her vagina with his penis and performed oral sex on her without her permission.  [The Victim] reported that [Appellant] would get on top of her and state "Shut up and go with it", and [Appellant] would touch and grab her breasts.   [The Victim] reported that the abuse began approximately when she was thirteen years [old] and ended when [the Victim] gave birth in July of 2018[, to twins when she was 16 years old[2]].

Trial Ct. Op., 7/21/20, at 2 (record citation omitted).  Appellant was charged with, *inter alia*, three counts each of rape, statutory sexual assault, IDSI, and indecent assault, and one count each of corruption of minors, and endangering the welfare of children.

---

[2] We note, however, the Victim testified her twin children were born in July of 2017.  N.T. Jury Vol. I at 19.

Prior to trial, the trial court granted Appellant three two-month continuances in May, July, and September of 2019. Trial Ct. Op. at 19. The court explained the Lebanon County Court of Common Pleas "has endeavored to control a burgeoning caseload by implementing a two (2) continuance rule." *Id.* at 17. The trial court "reluctantly granted the third continuance request," but "specifically stated that 'no further continuances would be afforded to the defense." *Id.*

Appellant's case was scheduled for trial in the December 2019 term. Trial Ct. Op. at 18. On November 18, 2019, Appellant filed a *pro se* "motion for ineffective[e] counsel," claiming that "[b]esides the first time [Appellant] went to [his attorney R. Scot Feeman's, Esquire,] office, [Appellant] only [saw Attorney Feeman] one time in [nine] months[ ]" and that Attorney Feeman was requesting additional funds to proceed to trial despite never sending Appellant a fee agreement. Appellant's Motion for Ineffective Counsel, 11/18/19, at 1. On November 26th, Attorney Feeman filed a motion to withdraw from representation. On December 11, 2019, the trial court held an evidentiary hearing, where it found an ineffective assistance claim was "way premature" and denied counsel's motion. N.T., Motion to Withdraw as Counsel, 12/11/19, at 5-6. Appellant filed a *pro se* notice of appeal on December 16, 2019.

This case was scheduled for jury trial two days later, on December 18, 2019. At the beginning of the proceedings, Appellant, represented by Attorney Feeman, "requested a postponement[,]" arguing the trial court

- 3 -

lacked jurisdiction due to his pending appeal from the pre-trial ruling. Trial Ct. Op. at 17. Nevertheless, the trial court directed the case to proceed to the jury trial as scheduled. The trial court denied what it characterized was Appellant's "eleventh hour" "attempt[ ] to circumvent Lebanon County's two continuance rule and [the trial court's] 'no further continuances' order." *Id.* at 18.

The case thus immediately proceeded to a jury trial. The trial court, in its opinion, summarized the Victim's trial testimony as follows:

> [Appellant] was her stepfather and . . . she lived with [him] on Weavertown Road [in Lebanon, Pennsylvania,] for "quite a few years" from the time she was in elementary school until 2018. [Appellant raped the victim] "multiple times . . . too many times to count[." The Victim] remembered being 13 years of age when it started. [The Victim stated: "]I didn't want to have sex with him, but he would force me to." [Appellant] would "take me back to his bedroom. He would hold my legs down and stick his penis into my vagina. He was twice my weight, and I could not get him off of me."
>
> [T]he rape would take place in [Appellant's] bedroom, in his bed. Sometimes [the Victim] would be watching TV in [Appellant's] room, other times [Appellant] would carry or push [the Victim] back to his room. Sometimes [Appellant] would "smack my butt or grab my boobs . . . on top of my clothes". [The Victim] told [Appellant] that she "didn't want to do it, that it's not right" before and during the occurrence. [Appellant] told [the Victim] to "shut up and [she] should get over it."
>
> [The Victim] tried to physically stop the rape. She would kick or squeeze her legs shut. When [Appellant] stuck his penis in her she would "sometime[s] like squeeze my legs shut, but [Appellant] would still force them open." [Appellant] would try to "take his mouth down there and lick my vagina" and [he] licked her vagina more than one time when she was 15 years of age. [The Victim] told [Appellant] that "his mouth don't belong down

- 4 -

there and that this wasn't right and he should stop," but [Appellant] did not stop.

[The Victim] testified that [Appellant] put his penis into her vagina when she was 13[,] 14[,] and 15 years of age. [Appellant] attempted to do the same "a few times after having my kids . . . and a few times when I was pregnant" while she was 16[. Appellant] "would start undressing me and grabbing my boobs and my butt and force my clothes off of me" and touched "my vagina" . . . "on top and underneath" [her clothing] when she was 13[,] 14[,] and 15 . . . .

[The Victim] testified that while living at 321 Weavertown Road, other people including [Appellant], resided in the home including "Cassie Bradburn [the Victim's mother], Cynthia Garcia[, Cassie's paramour and the Victim's step-mother], Alex Contestible, [the Victim's] twins[,] my stepmom's little boy," and [E.B., Appellant's] daughter. [W]hen [Garcia] moved into the house, the things that [Appellant] did to [the Victim] stopped. When [Garcia] moved into the house, [the Victim's] mother and [Appellant] were still married and in a relationship.

\* \* \*

[The Victim] testified [Appellant] threatened her with being grounded and that when "these things" were happening she felt "regretful, like I didn't want to be in the house. I didn't want to be home." [The Victim] was afraid because [Appellant] would punch holes in the walls and throw things. [The Victim] was scared to tell her mom because she felt her mom would not believe her.

After [Appellant] was no longer living at the same residence[,] he wanted "to take the kids overnight." [The Victim] argued with her mother that she didn't want to be alone with [Appellant]. The Victim] went to work at Cedar Haven and talked to Filiz [Karman), an occupational] therapist at Cedar Haven. After that a representative from Child [and Youth] Services [(CYS)] came to see [the Victim. The Victim also] was contacted by [Detective] Shaffer. [The Victim] testified that her mother contacted her at work the day [CYS] came to the house and told [the Victim] that "they were going to take [the Victim's] kids." [The Victim] left work early that day and went home, after [Detective] Shaffer and [CYS] came to her job. When she got home[, the Victim's] "mom, stepmom, the kids" were there and "then [the Victim's mother] called [Appellant]."

[Appellant] came to the house [and denied the Victim's allegations of rape.]

\* \* \*

[The Victim] testified that she spoke with [CYS] and someone at the Children's Resource Center. [The Victim] told both agencies that the person who was raping her from the time she was 13 through 15, was [Appellant].

Trial Ct. Op., 7/21/20, at 2-6 (record citations and capitalization omitted).

At trial, the Commonwealth presented several additional witnesses. Karman, the occupational therapist at Cedar Haven, testified that on January 25, 2019, the Victim disclosed to her she was sexually abused. N.T., Jury Trial Vol. I, at 100. Karman contacted CYS because she is a "mandatory reporter [in her] place of employment." *Id.*

Investigator Smith testified that on that same day, January 25, 2019, he received a telephone call from Karman regarding the Victim. N.T., Jury Trial Vol. I, at 76. Investigator Smith, with Detective Shaffer, interviewed the Victim and then spoke with the Victim's mother (Cassie) and step-mother (Garcia), that same day. *Id.* at 77, 79. On February 25, 2019, Investigator Smith interviewed Appellant and asked if he was ever alone with the Victim. *Id.* at 79, 81. Appellant first responded, "[N]o," but then stated "that two years ago [he] was on a mix of coke, marijuana[,] and alcohol," and "that when he woke up, [the Victim] was in the bed." *Id.* at 81. Investigator Smith asked Appellant if something could "have happened that [Appellant] did not remember[,]" and Appellant responded, "[M]aybe." *Id.* at 82.

Forensic Interviewer Witter testified that in a forensic interview on February 4, 2019,[3] the Victim disclosed Appellant sexually abused her. N.T., Jury Trial Vol. I, at 70-71.

Detective Shaffer testified that on February 6, 2019, he interviewed Appellant. N.T., Jury Trial Vol. I, at 108. Detective Shaffer advised Appellant to be truthful so Detective Shaffer could "offer him some help through the courts . . . for sexually acting out[.]" *Id.* at 110. Appellant denied having a sexual relationship with the Victim. *Id.* at 114. The next morning, Appellant emailed Detective Shaffer, stating he needed until February 15th "to get all of [his] personal belongings [and] financial stuff taken care of." *Id.* at 111-12. Detective Shaffer confirmed a February 15th appointment with Appellant, to which Appellant replied, "Thank you, sir. Please get me help. I need it bad." *Id.* at 112-13.

Appellant presented one witness, Adrian Muthouma (Muthouma), his former employee and roommate. N.T. Jury Trial Vol. II at 132-33. Muthouma described the relationship between Appellant and the Victim as "father/daughter" and stated the Victim and her children came to Muthouma's

---

[3] While the trial court opinion states Forensic Interviewer Witter interviewed the Victim on both February 4th and February 14th, Forensic Interviewer Witter testified the interview occurred on February 4th. *See* Trial Ct. Op. at 2, 7; N.T., Jury Trial Vol. I, at 70.

home for breakfast on Sundays. *Id.* at 133. In 2013, Muthouma pleaded guilty to false identification to law enforcement. *Id.* at 135.

Finally, Appellant testified on his own behalf that he did not have a sexual relationship with the Victim, never threatened the Victim in order to have a sexual relationship with her, and never touched the Victim inappropriately. N.T., Jury Trial Vol. II, at 140-41. Appellant told Detective Shaffer he needed "help" in his February 7th emails because he was "going to take [his] own life." *Id.* at 148. Appellant stated Detective Shaffer "never spoke to [him] about getting [ ] help for sexually acting out[.]" *Id.* at 152. Appellant admitted waking up with the Victim in his bed, but added there were "moments" when his "kids [ ] would all sleep next to [him] because [he would] be home from work." *Id.* at 145. Appellant denied using "coke," but agreed that he had ingested marijuana and alcohol. *Id.* at 149. Appellant admitted telling Investigator Smith it was "possible" that "something had happened" between himself and the Victim, but testified at trial that "it wasn't possible." He also added that at the time of the February 25, 2019, interview, he "was not in the right state of mind to be talking to anybody" and he "was on suicide watch in the jail." *Id.*

The jury found Appellant guilty of three counts each of rape, statutory sexual assault, and indecent assault, and one count each of IDSI, corruption of minors, and endangering the welfare of children.

On January 2, 2020, this Court quashed Appellant's *pro se* appeal from the December 11, 2019, order denying his motion claiming ineffective assistance of counsel, since the trial court's order was not a collateral order invoking this Court's jurisdiction. **Commonwealth v. Bradburn**, 2024 MDA 2019 (order) (Pa. Super. Feb. 13, 2020).

On March 11, 2020, the trial court conducted sentencing. It found Appellant's convictions of rape, indecent assault, IDSI, and corruption of minors each carried a mandatory sentence of 25 to 50 years' incarceration, due to his prior conviction of sexual offenses.[4] Order 3/12/20. The court thus imposed sentences of 25 to 50 years' incarceration for each of these eight convictions, all to be served concurrently. For endangering the welfare of children, the court sentenced Appellant to a consecutive period of 18 to 36

_____

[4] **See** 42 Pa.C.S. § 9718.2(a)(1) ("Any person who is convicted . . . of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth . . . or . . . another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement . . . ."), (b) ("An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory minimum sentence . . . ."). **See also Commonwealth v. Aponte**, 855 A.2d 800, 805 (Pa. 2004) (although **Apprendi v. New Jersey**, 530 U.S. 466 (2000), "made clear that any fact which increases the maximum penalty must be submitted to a jury and proved beyond a reasonable doubt[,]" **Apprendi** delineated prior convictions as an exception to this requirement).

months' incarceration. The court found Appellant's convictions for statutory sexual assault merged with his convictions for rape for sentencing purposes.

On March 19, 2020, Appellant filed a timely post-sentence motion seeking a judgment of acquittal and a new trial, arguing the trial court erred in proceeding to trial despite his pending appeal with this Court. Appellant's Post-Sentence Motion, 3/19/20, at 2 (unpaginated). Appellant also argued his convictions were against the weight of the evidence, where he denied all allegations against him and the "only testimony about the alleged acts" came from the Victim and were uncorroborated. *Id.* The trial court denied the motion on July 21, 2020.

This timely appeal followed.[5] In response to the trial court's order, Appellant filed a Pa.R.A.P. 1925(b) concise statement of matters complained

_____

[5] A trial court has 120 days to decide a post-sentence motion, and if it fails to decide the motion within that period, the motion is deemed denied by operation of law. Pa.R.Crim.P. 720(B)(3)(a). When the motion is deemed denied by operation of law, the clerk of courts shall enter an order deeming the motion denied on behalf of the trial court and serve copies on the parties. Pa.R.Crim.P. 720(B)(3)(c). Upon motion of the defendant within the 120-day disposition period, the judge may grant one 30-day extension for decision on the motion. Pa.R.Crim.P. 720(B)(3)(b). However, no such motion was filed in this case.

We note that the 120th day after sentencing was July 17, 2020. The trial court's order denying post-sentence motions was entered four days thereafter, on July 21, 2020. However, the clerk of courts did not enter an order deeming the motion denied on July 17th. Appellant filed the instant notice of appeal on July 28th, which was within 30 days of the deemed denial date and the trial court's July 21, 2020, order denying the post-sentence motions. Based on these factors, we conclude there has been a breakdown in

*(Footnote Continued Next Page)*

of on appeal, challenging both the weight and sufficiency of the evidence, stating the Commonwealth did not present any corroborating evidence to the Victim's testimony. Appellant's Concise Statement of Matters Complained of on Appeal, 8/7/20.

We remind counsel that a Rule 1925(b) statement challenging the weight and sufficiency of the evidence must specify the crimes and elements that an appellant is contesting. *See Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008) ("If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the . . . elements upon which the evidence was insufficient.") (citation omitted). *See also Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011) ("[T]he Rule 1925(b) statement must be 'specific enough for the trial court to identify and address the issue [an appellant] wishe[s] to raise on appeal.'"). Here, Appellant's Rule 1925(b) statement does not specify which convictions or elements he contests. On this basis alone, we could dismiss the appeal. Nevertheless, as we may discern the nature of his claims, we

court operations and therefore we may overlook the defect in Appellant's notice of appeal. *See Commonwealth v. Khalil*, 806 A.2d 415, 420-21 (Pa. Super. 2002) (excusing untimeliness of appellant's notice of appeal, filed more than 30 days after the date post-sentence motion was deemed denied by operation by law, where "the failure of the clerk of courts to issue an order[,] deeming Appellant's post-sentence motions denied by operation of law, was a breakdown of the processes of the trial court").

decline to find waiver on the basis of a vague Rule 1925(b) statement. **_See_**

**_Williams_**, 959 A.2d at 1257.

Appellant's statement of questions involved raises the following four

issues:

> 1. Did the Court err in proceeding to trial despite [Appellant] filing a Notice of Appeal to the Superior Court of Pennsylvania on the denial of his request seeking new counsel?
>
> 2. Should the verdict be overturned, and [Appellant] afforded a new trial because there was no additional evidence of the alleged acts of [Appellant] other than the testimony of the victim?
>
> 3. Should the finding of "forcible compulsion" be overturned as there was insufficient evidence to make such a finding?
>
> 4. Should the verdict be overturned, and [Appellant] afforded a new trial on the merits as the verdict itself was against the weight and sufficiency of the evidence presented at trial?

Appellant's Brief at 4.[6]

Appellant's first claim is based on his December 16, 2019, notice of

appeal from the trial court's December 11th order denying trial counsel's

motion to withdraw. Appellant's Brief at 11. Appellant contends that "upon

the filing of an appeal, the trial court may no longer proceed[,]" unless "only

a particular item is appealed." **_Id._**, _citing_ Pa.R.A.P. 1701(a) ("[A]fter an

appeal is taken . . . the trial court [ ] may no longer proceed further in the

---

[6] Appellant's five-page argument section, however, is not divided accordingly. We remind counsel: "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part — in distinctive type or in type distinctively displayed — the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." **_See_** Pa.R.A.P. 2119(a).

matter"), (c) ("Where only a particular item[ ] adjudged in the matter is involved in an appeal, [it] shall operate to prevent the trial court [ ] from proceeding further with only such item, [ ] unless otherwise ordered by the trial court [ ] or by the appellate court[.]").

Appellant insists that his request for new counsel was "'tightly intertwined' with the balance of the remaining case," and thus upon his filing of the notice of appeal, the trial court was not allowed to "take any action." Appellant's Brief at 12, *citing* **Commonwealth v. McClure**, 172 A.3d 668, 669 (Pa. Super 2017). Appellant maintains a defendant is allowed to "appeal to [this Court] directly from a collateral order[,]" which has been defined as an order where "the right involved is too important to be denied review[.]" **Id.**, *citing* **Commonwealth v. Parker**, 173 A.2d 294, 296 (Pa. Super 2017). Appellant states the right to counsel of "one's choice in a criminal case is[ ] 'particularly significant' because a defendant needs to have[ ] 'confidence in his attorney.'" **Id.** at 13, *citing* **Commonwealth v. Velasquez**, 263 A.2d 351, 353 (Pa. 1970). We conclude no relief is due.

Our Supreme Court has stated:

Rule of Appellate Procedure 313 sets forth a narrow exception to the general rule that only final orders are subject to appellate review. Under this exception, an interlocutory order is considered "final" and immediately appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. This third prong requires that the matter must effectively be unreviewable on appeal from final judgment.

- 13 -

*Commonwealth v. Wells*, 719 A.2d 729, 730 (Pa. 1998) *citing*, *inter alia*, Pa.R.A.P. 313(b).

In **Wells**, the appellant argued the trial court's order denying counsel's petition to withdraw from representation met "all three criteria of a collateral order, and therefore, is immediately appealable under Rule 313." **Wells**, 719 A.2d at 730. Our Supreme Court stated:

> We disagree and instead find that this order does not satisfy the third requirement of the collateral order exception. **See Fried v. Fried**, . . . 501 A.2d 211, 214 ([Pa.] 1985) (order must satisfy all three criteria to be immediately appealable under collateral order exception).
>
> [ ] In **Commonwealth v. Johnson**, . . . 705 A.2d 830, 834 (Pa. 1998), the Court adopted the reasoning of **Flanagan v. United States**, 465 U.S. 259 . . . (1984), and held that a pretrial order removing trial counsel in a criminal case does not satisfy the collateral order exception, and thus, is not immediately appealable. [P]ostponing review of a disqualification order until final judgment would not cause a criminal defendant's right to counsel of choice to be irretrievably lost. In so holding, we stated:
>
>> Like the denial of a suppression motion, an order disqualifying counsel is reviewable after judgment of sentence. If a judgment is obtained and it is determined on appeal that the trial court improperly removed counsel, the right to counsel of choice is not lost. There will be a new trial and the defendant will have his counsel of choice.
>>
>> \* \* \*
>
> . . . Thus, since Appellant's claimed right would not be irreparably lost if review of the order were postponed until final judgment, the court's order denying the Petition to Withdraw is not appealable under the collateral order doctrine.

**Wells**, 719 A.2d at 730-31 (some citations omitted).

Appellant ignores that this Court quashed his prior appeal, concluding the trial court's order denying Attorney Feeman's petition to withdraw was not an appealable collateral order. **See Bradburn**, 2024 MDA 2019 (order) (Pa. Super. Feb. 13, 2020); **see also** Pa.R.A.P. 313(b); **Wells**, 719 A.2d at 730-31. Thus, Appellant's argument does not merit relief.

In his remaining claims, Appellant argues the verdict was against the weight and sufficiency of the evidence. Appellant's Brief at 4. Preliminarily, we note that although Appellant was convicted of a total of twelve counts, including six separate crimes, he fails to specify which particular offense he is challenging. He does articulate a challenge regarding "forcible compulsion," which we note is an element of rape. **See** 18 Pa.C.S. § 3121(a)(1); Appellant's Brief at 10-11.

Instead, Appellant argues generally, "the Commonwealth presented no evidence, other than the victim's testimony, that linked [him] to the alleged acts committed." Appellant's Brief at 9. Appellant states there was "no DNA evidence [or] corroborating testimony that supported" the Victim's claims. **Id.** at 9-10. Appellant maintains the Victim's testimony was "misty" because she could not offer "specific dates, seasons of the year[,] or other evidence that remotely suggests that what the Victim alleged at trial actually occurred." **Id.** at 10. Appellant insists there must "be a combination of evidence that links the accused to the crime [for] circumstantial evidence [to be] sufficient." **Id.**, citing **Commonwealth v. Eckrote**, 12 A.3d 383, 386 (Pa. Super. 2010).

Finally, Appellant avers that when considering the facts of this case in the light most favorable to the Commonwealth, "it is still difficult to establish beyond a reasonable doubt that 'forcible compulsion,' as defined, was proven in this case." Appellant's Brief at 11. We conclude no relief is due.

The standards of review for sufficiency and weight claims are well settled:

> When reviewing a sufficiency of the evidence claim, an appellate court must view all the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as the verdict winner and must determine whether the evidence was such as to enable a fact finder to find that all of the elements of the offense[ ] were established beyond a reasonable doubt.
>
> \* \* \*
>
> ["T]he weight of the evidence is exclusively for the fact finder who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses." We cannot substitute our judgment for that of the finder of fact. We may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, our role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion.

*Commonwealth v. Castelhun*, 889 A.2d 1228, 1232, 1234 (Pa. Super. 2005) (citations omitted).

In Pennsylvania, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged

crime." ***Commonwealth v. Johnson***, 180 A.3d 474, 481 (Pa. Super. 2018);

***see also*** 18 Pa.C.S. § 3106 ("The testimony of a complainant need not be

corroborated in prosecutions . . . ."). Moreover:

> [T]his [C]ourt held that the uncorroborated testimony of a rape victim, if believed by the jury, is sufficient to support a rape conviction and no medical testimony is needed to corroborate a victim's testimony if the testimony was rendered credible by the jury.

***Johnson***, 180 A.3d at 479 (citation omitted).

The Pennsylvania Crimes Code defines, in relevant part, rape, statutory

sexual assault, indecent assault, involuntary deviate sexual intercourse,

corruption of minors, and endangering the welfare of children as follows:

> § 3121. Rape.
>
> **(a) Offense defined**. A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:
>
> > (1) By forcible compulsion[.]

18 Pa.C.S. § 3121(a)(1). We note forcible compulsion is defined as:

> Compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. The term includes, but is not limited to, compulsion resulting in another person's death, whether the death occurred before, during or after sexual intercourse.

18 Pa.C.S. § 3101.

> § 3122.1. Statutory sexual assault.
>
> **(b) Felony of the first degree.** A person commits a felony of the first degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is 11 or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S. § 3122.1(b).

§ 3126. Indecent assault.

**(a) Offense defined.**  A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

\* \* \*

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S. § 3126(a)(8).

§ 3123. Involuntary deviate sexual intercourse.

(a) Offense defined.  A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant:

\* \* \*

(7) who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other.

18 Pa.C.S. § 3123(a)(7).

§ 6301. Corruption of minors.

**(a) Offense defined.**

(1) . . . (ii) Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the

commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S. § 6301(a)(1)(ii).

§ 4304. Endangering welfare of children.

**(a) Offense defined.**

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S. § 4304(a)(1).

Though Appellant frames his argument, that the Victim's testimony was insufficient to support his conviction, we conclude this claim goes to the weight of the evidence. We reiterate that "uncorroborated testimony of a rape victim, if believed by the jury, is sufficient to support a rape conviction and no medical testimony is needed to corroborate a victim's testimony if the testimony was rendered credible by the jury." *Johnson*, 180 A.3d 479.

Furthermore, Appellant fails to address the trial court's reasoning for denying his post-sentence challenge to the weight of the evidence. The trial court stated that "[b]ased upon [the Victim's] testimony alone, [it] would deny" Appellant's weight and sufficiency challenges. Trial Ct. Op. at 14. The trial court, however, pointed out that there was evidence corroborating the Victim's testimony, namely: Appellant's response to Detective Shaffer's offer of help for sexual misconduct, that Appellant needed help; the Victim's seeking "to avoid being alone with Appellant" prior to reporting the abuse; and

Appellant's access to the Victim during the time period of the abuse. *Id.* at 14-15.

The trial court also rejected Appellant's claim that the evidence did not establish forcible compulsion for the rape charge.

> [The Victim] testified that she is five [feet] tall and weighs 114 pounds. [Appellant] was much larger [and] "would carry [ ] or start pushing [the Victim] back to his room." There were other times when [Appellant] would smack [the Victim's] butt or grab her boobs. When [the Victim] tried to object to [Appellant's] behavior, he would tell her to "Shut up." At times, [the Victim] stated that she would try to kick or squeeze her legs shut. During these occasions, [Appellant] would force her legs open and insert his penis. [The Victim] also testified that [Appellant] would "force [her] clothes off of [her]." [Appellant] threatened to "ground" [the Victim] if she tried to stop him.[FN]
>
> _____
>
> [FN] . . . To a young woman who was being frightened and rape[d], being forced to remain in her home with her rapist via a "grounding" would be a horrifying prospect.

Trial Ct. Op. at 16-17.

The Victim's testimony did not just show, as Appellant argues, a "mere [ ] lack of consent." *See Brown*, 727 A.2d at 544. We agree with the trial court that Appellant used physical force when he "pushed" the Victim into his bedroom, held the Victim's legs down, and "force[d] them open." N.T., Jury Trial Vol. I, at 22-24. Further, Appellant used "emotional or psychological force" when he threatened to "ground[ ]" the Victim. *Id.* at 29; *see* 18 Pa.C.S. § 3101.

The jury's credibility determinations were not "so contrary to the evidence as to shock one's sense of justice." *See Castelhun*, 889 A.2d at

1234. To the contrary, the Victim's testimony, believed by the jury, was sufficient to prove each element of the charged offenses. Although Appellant denied the accusations in his trial testimony, the trial court properly concluded the jury was free to believe the Victim and reject Appellant's testimony. ***See Castelhun***, 889 A.2d at 1234. Thus, no relief is due.

In sum, we conclude the trial court had jurisdiction despite Appellant's improper appeal from the order denying his counsel's petition to withdraw. We further conclude the verdict was not against the weight or sufficiency of the evidence. Thus, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/15/2021