J-A15036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM SHELTON | : | |
| | : | |
| Appellant | : | No. 1243 WDA 2022 |

Appeal from the Order Entered September 12, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0005062-2022

BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:            **FILED: August 9, 2023**

William Shelton (Shelton) appeals from the order entered in the Court of Common Pleas of Allegheny County (trial court) granting the Commonwealth's motion to disqualify his counsel from his criminal case that remains pending in the trial court.  Upon review, we quash this appeal.

**I.**

**A.**

Shelton was charged with homicide in connection with the fatal shooting of Marvin Matthews that occurred on June 19, 2022, in Braddock Borough, Allegheny County.  Shelton waived a preliminary hearing and present counsel entered her appearance as his counsel.  The Commonwealth subsequently

_____

[*] Retired Senior Judge assigned to the Superior Court.

filed a motion to disqualify counsel and her law firm from representation due to a conflict of interest under Pennsylvania Rules of Professional Conduct 1.7 and 3.7. Pa.R.P.C. 1.7 (addressing a lawyer's duties with respect to communications with his or her client); Pa.R.P.C. 3.7 (rule barring an attorney from acting as an advocate at trial in which the lawyer is likely to be a necessary witness and including exceptions to that prohibition).

The Commonwealth informed the trial court that at a bail hearing, counsel requested a behavior clinic evaluation of her client and explained that she was not at liberty to disclose her reasons for the request.[1] It alleged the existence of evidence that made counsel a witness for trial by engaging in a telephone conversation with Shelton that was not covered by the attorney-client privilege due to the manner in which the call was conducted and showed what appeared to have been counsel coaching Shelton as to what to tell the behavior clinic evaluator.

In support of the disqualification motion, the Commonwealth alleged the following:

> 4. On or about July 20, 2022[, the prosecutor] was informed by Detective Hoffman that a three-way jail recorded phone call was made on July 14 at approximately 10:31 a.m. The detective relayed that [Appellant] was speaking to an unknown female before that female begins asking questions to a third party (believed to be [present counsel]) who ultimately gets on the phone and identifies herself. Upon inquiry of the detectives, [the

---

[1] The certified record for this appeal does not contain any notes of testimony reflecting the events that transpired at this hearing.

prosecutor] informed them to listen no further to the call. Detectives relayed that they had heard enough to garner that the discussion was being had as to how to approach the upcoming behavior clinic evaluation. [The prosecutor] was of the opinion that any matters of privilege had been broken by the three-way nature of the call but nonetheless instructed detectives to listen no further out of an abundance of caution.

5. On or about August 2, 2022[, present counsel] informed [the prosecutor] that she had received word on the results of the behavior clinic evaluation. [Present counsel] relayed that her client was diagnosed with PTSD and further advanced her position that the PTSD was attributable to facts related to the case and having a bearing on the degree of homicide for which her client could bear responsibility.

6. [The prosecutor] then inquired as to Detective Hoffman as to the substance of the previously described call. It was relayed that the call appeared to have some coaching as to what to tell the behavior clinic evaluator. [The prosecutor] then requested that Detective Hoffman take steps to preserve the call and provide a copy to the Office of the District Attorney.

7. The call was placed at approximately 10:31 a.m., contextually it appears as if the call is placed at the conclusion of the testimony in the withdrawn bail matter. In it, [present counsel] relays to her client that he will be getting an evaluation and that she needs him to tell the evaluator that he ([Appellant]) was under duress for months. She further relays that she does not need [Appellant] to tell the evaluator that she ([present counsel]) told him to say that he was under duress but that he should say that he told [present counsel]. She relays that this is a neutral doctor and it is good for their case because a jury would likely be told that a private witness was paid.

8. The Commonwealth obtained video surveillance from the hallway area near courtroom 504A from July 14, 2022. In the video at time stamp 10:29:31[, present counsel] is standing outside of the area of Courtroom 504A and is handed a cellular phone by an unknown female. [Present counsel] then proceeded to hold the phone to her ear until approximately 10:31:28 when the phone is returned to the original unknown female. [Present counsel] is in and amongst three people during the time for which she has the cellular device to her ear. The group, including

[present counsel], remain in the hallway until approximately 10:45 a.m. when they depart. This time coincides with the time of the recorded three-person jail call.

Disqualification Motion, 9/1/22, ¶¶ 4-8 (omitting references to attached exhibits). The Commonwealth appended a transcript of the recorded telephone call to the disqualification motion. *Id.* at attached Exhibit 3.

At a hearing on the motion to disqualify, the Commonwealth supplemented the record with an audio recording of the telephone conversation and the referenced surveillance video. In the arguments presented, the Commonwealth stated that the person who handed counsel the phone for the conversation was Shelton's girlfriend. Counsel argued that the attorney-client privilege protected the content of the conversation with Shelton because, while there were third parties present, she stepped aside, spoke low and they could not hear conversation. This is why all her calls with her clients include a warning about calls being recorded and she "always runs the risk of having [the] conversations overheard" when opting for in-person meetings with her clients. N.T. 9/8/22 at 7-9; *see also id.* at 14 ("When your client is in jail, there are no opportunities to have true, confidential conversations with your client.").

As for the content of the conversation, counsel argued that she was simply conveying to Shelton that he did not share his attorney-client privilege with a behavioral evaluator. *Id.* at 18-19 ("The difference was, I needed to tell my client, and you can't tell that behavioral evaluator what we just talked

about because I was letting him know that it was attorney-client confidentiality, that it was privileged and that he did not have privilege with that evaluator."). In response to the Commonwealth's argument that it had a duty to report the conversation when it became aware of the contents, counsel argued that contents of the call were missing the context of her prior conversations with her client. *Id.* at 22.

On September 12, 2022, the trial court entered an order granting the motion to disqualify Shelton's counsel.[2] Counsel then filed a motion to reconsider the ruling on the disqualification motion on September 22, 2022, and the reconsideration motion was denied on September 29, 2022. Order, 9/29/22, 1. In the reconsideration motion, counsel argued, *inter alia*, that the contents of the conversation with her client could not have constituted proof of her coaching her client to commit a fraud on the court because Shelton had already reported mental health symptoms that would support a duress defense and a history of him enduring abuse, and that he sought treatment for those symptoms prior to the recorded conversation. Reconsideration Motion, 9/22/22, ¶¶ 6-13, 26-27. On October 14, 2022, counsel filed the notice of appeal from the September 10, 2022 disqualification order.

---

[2] The court also entered orders appointing new counsel; however, for our purposes, our references to "counsel" refer to the attorney that was the focus of the disqualification motion. Order 9/12/22, 1; Order 9/14/22, 1; Order 9/20/22, 1.

**B.**

Because the appeal appeared to be facially untimely because the notice of appeal was filed more than 30 days after the trial court granted the motion to disqualify, we issued a rule to show cause order why the appeal should be quashed.  *See Commonwealth v. Moir*, 766 A.2d 1253 (Pa. Super. 2000) (holding that a motion for reconsideration does not toll an appeal period); *see also* Pa.R.A.P. 903(a) ("the notice of appeal … shall be filed within 30 days after the entry of the order from which the appeal is taken").  The rule to show cause order noted that the notice of appeal stated that it was filed from the trial court's order that denied Shelton's request for reconsideration of the order granting disqualification.

Shelton filed a response to the rule to show cause order in which his counsel proffered a printout from the Unified Judicial System of Pennsylvania's PACFile system to show that counsel had attempted to electronically file the notice of appeal on October 10, 2022.  Counsel alleged that she was "at trial the follow[ing] Monday" and did not notice until that evening that the notice of appeal filing had not been accepted as filed.[3]  Counsel then inquired as to the status of the filing with the Department of Court Record on Tuesday,

---

[3] We note that while counsel identified October 10, 2022, as a Saturday, October 10, 2022, was actually a Monday.  We also note that while counsel referred to being "on trial the following Monday" after the attempt to file the notice of appeal on a Saturday, that second Monday in October 2022 was an observed county, state and federal government holiday for Columbus Day.

October 13, 2022, without getting a definitive answer. Upon appearing at that department's office the next day, she was purportedly informed that she could not use the PACFile system to file the notice of appeal because there was no way for her to pay filing fees on that system as a privately-retained attorney. *Id.* Counsel paid the filing fee and was supposedly told that the filing was recorded in the system as of October 10, 2022, but that it would not be perfected until October 14, 2022. *Id.* at 2.

Counsel asserted that a breakdown in the court system was to blame for the late filing date, and that the failure to pay a filing fee should not have invalidated the filing date which should have been October 10, 2022. *Id.* ("I should have received the filing date of 10/10/22, irrespective of perfecting the filing by paying the fee."). We discharged the rule to show cause order and advised the parties that the issue addressed by the order could be revisited in the upcoming argument panel.

On appeal, Shelton presents the following question for our review: "Whether the trial court erred in Granting the Motion to Disqualify and Appointing New Counsel when the underlying information was priviledge[d] communications?" Appellant's Brief at 5 (unpaginated).[4]

---

[4] Shelton has failed to number the pages of his brief as required by Pa.R.A.P. 2173. For the sake of clarity, we will reference the pages in Shelton's Brief as if the pages were numbered, with the Statement of Jurisdiction on the first numbered page.

**II.**

**A.**

Before addressing the substantive issue presented, we must assess whether we have jurisdiction to hear this appeal.  In our rule to show cause order, we were concerned with whether Shelton had filed a timely notice of appeal.  Here, the last day upon which Shelton could have filed a timely notice of appeal was October 12, 2022, 30 days after the entry of the order granting the Commonwealth's disqualification motion, but it was not filed until October 14, 2022.  **See** Pa.R.A.P. 903(a) ("Except as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner taking appeal) shall be filed within 30 days after the entry of the order from which the appeal is taken.").  While counsel's recollection of the events surrounding the attempt to file the notice of appeal in her answer to our rule to show cause order appears to be inexact and based on mismatched days and dates, the PACFile printout establishes that counsel attempted to electronically file the notice of appeal on October 10, 2022, but it was not accepted because the filing fee was not paid.  Shelton's counsel asserted in the answer that she was unable to confirm until October 14, 2022, that the notice was not accepted because she had

been in trial, and that once she determined that it had not been paid, she then paid the fee.[5]

The trial court and the Commonwealth submit that we find the instant appeal untimely because the notice of appeal was not accepted until October 14, 2022. We decline to do so.

Pa.R.A.P. 902(b) provides that "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate ..." In **First Union Nat. Bank v. F.A. Realty Invs. Corp.**, 812 A.2d 719, 723 (Pa. Super. 2002), we addressed whether the failure to file a filing fee requires the dismissal of an appeal. We held that it does not, stating:

> Reading all of these provisions together compels the conclusion that an appeal will not be rendered automatically invalid by an Appellant's initial failure to comply with the financial obligations of Pa.R.A.P. 905 and Pa.R.A.P. 2701. An appeal filed within the allowed time period without the requisite fee will still be considered valid.

---

[5] Shelton's counsel does not specify whether the PACFile system was on a county-based system or the Unified Judicial System of Pennsylvania's Web Portal. For our purposes, it is immaterial because a notice of appeal mistakenly filed with this Court would have been stamped with the date of the receipt and transferred to the clerk of the court for the court that entered the order appealed from, and upon payment for a filing fee, the notice would have been deemed final on the date originally filed. **See** Pa.R.A.P. 905(a)(4); West's Pa.Prac., Appellate Practice § 125:1 ("PACFile is a service that provides parties the ability to electronically file documents on both new and existing cases with the Pennsylvania courts.... Those using PACFile receive automatic e-mail notifications when filings are made or orders are entered in their cases").

> An appellate court certainly has the authority to dismiss an appeal on the basis of failure to tender the required fee; however, that authority is a discretionary remedy which the appellate court can impose if circumstances warrant. Dismissal is therefore not obligatory in all instances. Appropriate circumstances warranting dismissal of an appeal by an appellate court would be, for example, if the filing party unduly delays paying the requisite fee, or unduly delays seeking leave to appeal in forma pauperis. If also it has been demonstrated that a litigant has deliberately failed to remit a required filing fee, or exhibited a clear pattern of attempting to cause delay in legal proceedings by repeatedly filing appeals, and then failing to timely remit the appropriate fees, this Court will not hesitate to impose the sanction of dismissal, and any other sanctions that we deem appropriate.

This outcome is unaffected just because the matter was electronically filed. Pa.R.A.P. 125 provides that "[e]lectronic filing of documents in the appellate courts shall be through the PACFile appellate court electronic filing system. Electronic filing of documents shall be governed by Administrative Orders of the Supreme Court of Pennsylvania, which may be found at http://ujsportal.pacourts.us/refdocuments/judicialorder.pdf." The administrative order under the title of "Electronic Filing, Transmission and Remand of Records" in Section (A) provides: The electronic filing, transmission or remand of a record through the PACFile system by a court or other government unit **shall constitute the filing**, transmission or remand of the record under the Pennsylvania Rules of Appellate Procedure." (Emphasis added.)

Because none of the factors mentioned in *First Union Nat. Bank* or any other factor would make it appropriate for us to quash the appeal, we will not do so on that basis.

**B.**

However, even though we find that the notice of appeal was timely, we are constrained to quash this appeal for lack of jurisdiction because the disqualification order was an unappealable collateral order under Pa.R.A.P. 313(a). Our Supreme Court has explained:

> Rule of Appellate Procedure 313 sets forth a narrow exception to the general rule that only final orders are subject to appellate review. Under this exception, an interlocutory order is considered "final" and immediately appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the crimes right will be irreparably lost. This third prong requires that the matter must effectively be unreviewable on appeal from final judgment.

***Commonwealth v. Wells***, 719 A.2d 729, 730 (Pa. 1998).

Our Supreme Court addressed whether the granting of a motion for disqualification was a collateral order that could be immediately appealed in ***Commonwealth v. Johnson***, 705 A.2d 830 (Pa. 1998). In that case, it reversed our holding that an order disqualifying counsel was an appealable collateral order and remanded for the entry of an order quashing the appeal. ***Id.*** at 834. The Supreme Court stated that criminal defendants generally may appeal only from a judgment of sentence, but have been permitted to appeal from interlocutory orders under the collateral order Pa.R.A.P. 313 "when an appeal was necessary to ensure that they would not be deprived of a constitutional right." ***Johnson***, 705 A.2d at 832-33. An example of an appealable interlocutory order pointed to by the Court was the denial of a

- 11 -

motion to dismiss based upon double jeopardy absent a trial court finding that the motion was frivolous. *Id.* At 833.

In holding that disqualification orders do not satisfy the requirements of the collateral order exception, our Supreme Court relied on the United States Supreme Court's decision in *Flanagan v. United States*, 465 U.S. 259 (1984), and concluded:

> Like the denial of a suppression motion, an order disqualifying counsel is reviewable after judgment of sentence. If a judgment is obtained and it is determined on appeal that the trial court improperly removed counsel, the right to counsel of choice is not lost. There will be a new trial and the defendant will have his counsel of choice. This is unlike a double jeopardy claim where if the trial goes forward and the court wrongly denied the motion, the right is lost.

*Johnson*, 705 A.2d at 833-34, *citing Flanagan*, 465 U.S. at 268-69. Our Supreme Court also reiterated in *Johnson* the importance of the finality rule in criminal cases because it serves to promote the compelling interest in prompt trials by avoiding the disruption of cases generated by piecemeal appellate review. 705 A.2d at 834.

Despite the trial court's reliance on that decision in its own opinion, Shelton does not address the *Johnson* opinion but, instead, rephrases the issue that "appellant's colorable claim of attorney-client privilege and attorney work-product privilege can establish the propriety of immediate appellate review," and cites *Berkeyheiser v. A-Plus Investigations, Inc.*, 936 A.2d 1117 (Pa. Super. 2007), and *Dougherty v. Philadelphia Newspaper*, 85 A.3d 1082 (Pa. Super. 2014). *Berkeyheiser* involves a discovery order, an

order granting a motion to strike objections to proposed subpoenas where some documents requested were allegedly privileged and, therefore, not discoverable. 936 A.2d at 1119, 1122-23. It has no application to this appeal because it does not involve discovery requests, and the court did not order the disclosure of privileged communications. Shelton may well still pursue a pre-trial motion to bar the admission of the contents of his communications with his counsel, but that expectation does not transform the disqualification order at issue into a discovery order.

*Dougherty* did involve a disqualification of counsel motion but, in that case, the order on appeal was one *denying* a motion for disqualification of counsel in a defamation case. 85 A.3d at 1083. The concern for the appellant in that case was to seek disqualification of a firm who had represented him in the past because he believed that there was a substantial risk that that firm would use confidential information, obtained from the prior representation, for adverse parties in the new matter. *Id.* at 1086. While addressing the denial of a motion to disqualify counsel, *Dougherty* is inapplicable because it concerned the prevention of the disclosure of privileged information in civil cases while in this appeal, the disqualification order did not directly or indirectly cause the dissemination of privileged information; it merely considered the appropriateness of disqualification.

In any event, *Johnson* requires us to quash this appeal without addressing the substantive issue presented. 705 A.2d at 834 ("We thus hold

- 13 -

that an order removing counsel in a criminal case is interlocutory and not immediately appealable.  Whether the trial court erred in removing counsel is not properly before this Court.").  Accordingly, the appeal is quashed as being interlocutory.

Appeal quashed.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/9/2023